NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ELAN CHEMICAL COMPANY, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> ADAMS EXTRACT & SPICE LLC and ADAMS FLAVORS, FOODS & INGREDIENTS LLC, <br><br> *Defendants*. | Civil No.: 23-cv-20914 (KSH) (JBC) <br><br><br> **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.   Introduction**

This dispute arises from the failure of defendant Adams Extract and Spice, LLC ("Adams")[1] to pay for two bulk orders of vanilla extract products from a New Jersey supplier, Elan Chemical Company, Inc. ("Elan"), in June 2023. Elan delivered both vanilla extract orders to Adams in Texas in July 2023, and Adams accepted delivery of both orders but has not paid the invoices totaling nearly $800,000. Elan now brings claims for breach of contract, quantum meruit, unjust enrichment, and account stated. Adams has moved to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

**II.   Background**

According to the complaint (D.E. 1, Compl.), Elan is a New Jersey corporation that produces and sells vanilla extract and other fine organic chemicals. (*Id.* ¶¶ 2, 7.) Adams is a Texas limited liability company that produces flavor and spice products. (D.E. 8-3, Def. Decl. ¶¶ 3-4.)

---

[1] Despite being named as a defendant in this action, "Adams Flavors, Food & Ingredients, LLC" is the former assumed name used by Adams Extract & Spice LLC and is not a separate legal entity. (D.E. 8-1, Def. Mov. Br. at 1.) To avoid confusion, the Court refers to the defendants collectively as a single entity, "Adams."

1

On June 5, 2023, Adams placed an order for 38,880 pounds of vanilla extract from Elan at $10.22 per pound, totaling $397,353.60, to be delivered to its office in Gonzales, Texas on July 6, 2023.  (Compl. ¶¶ 3-4, 9-10; Ex. A (June 5, 2023 invoice).)  Two days later, on June 7, 2023, Adams placed an identical order to be delivered on July 24, 2023.  (*Id.* ¶¶ 11-12; Ex. B (June 7, 2023 invoice).)  Elan sent Adams invoices for each order with Elan's Newark, New Jersey address in the header.  (*Id.* ¶ 13; Ex. A; Ex. B.)  Elan delivered both orders of vanilla extract to Adams as agreed, and Adams accepted both deliveries.  (*Id.* ¶¶ 10, 12, 14.)  Adams has not paid Elan for either order, and the full balance of $794,707.20 remains unpaid.  (*Id.* ¶ 14.)

On October 5, 2023, Elan filed a four-count complaint (D.E. 1) in this Court against Adams for breach of contract (count 1), quantum meruit (count 2), unjust enrichment (count 3), and account stated (count 4), seeking monetary damages of $794,707.20 plus interest.  Elan represented in its complaint that this Court "has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (i) there is an actual controversy between the parties; (ii) the amount in controversy significantly exceeds $75,000, exclusive of interest and costs; and (iii) the matter is between citizens of different states."  (*Id.* ¶ 5.)  It added that "[v]enue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this district."  (*Id.* ¶ 6.)

On December 7, 2023, Adams filed a motion to dismiss (D.E. 8) for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  It argues that it is domiciled in Texas, that it placed the vanilla extract orders in Texas to be shipped to Texas, and that "it is well-settled in Third Circuit case law that merely purchasing goods from a New Jersey company is insufficient to establish personal jurisdiction over a non-resident." (D.E. 8-1, Def. Mov. Br. at 1-2.)  Elan opposes Adams's motion (D.E. 18, Plf. Opp. Br.), arguing Adams has sufficient minimum contacts with New Jersey—namely, through its long-standing business relationship with Elan—to establish

specific personal jurisdiction and, in the alternative, asking the Court to allow for jurisdictional discovery. Both parties present declarations to support their positions. (D.E. 8-3, 18-1.)

**III.    Standard of Review**

When a defendant seeks dismissal under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff has the burden to prove, by a preponderance of the evidence and with affidavits or other competent evidence, facts sufficient to establish jurisdiction. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). The court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105, 113 n.5 (3d Cir. 2020) (cleaned up). The court need not limit the scope of its review to the pleadings. *Patterson v. F.B.I.*, 893 F.2d 595, 603-04 (3d Cir. 1990); *see Benitez v. JMC Recycling Sys., Ltd.*, 97 F. Supp. 3d 576, 582 (D.N.J. 2015) (Irenas, J.) ("The court may receive and weigh the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts.").

"[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). If the plaintiff makes out a *prima facie* case of personal jurisdiction, the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992) (cleaned up). So long as a plaintiff's claim of jurisdiction is not "clearly frivolous," courts should allow for jurisdictional discovery before dismissing for lack of personal jurisdiction. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

**IV.    Legal Standard**

3

A federal court may exercise personal jurisdiction over a nonresident defendant to the extent authorized by the law of the state in which it sits. *Carteret Sav. Bank*, 954 F.2d at 144 (cleaned up). New Jersey's long-arm statute extends to the limits permitted by the Fourteenth Amendment Due Process Clause, which require a defendant to have sufficient minimum contacts with a forum state such that maintaining suit in that state "does not offend traditional notions of fair play and substantial justice." *Id.* at 145 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two permissible types of personal jurisdiction—general jurisdiction, which subjects a defendant to all causes of action in the forum state, and specific jurisdiction, which only subjects a defendant to certain causes of action arising out of or relating to the defendant's connection with the forum state. *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022); *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 272 (2017). The parties agree that Adams is "at home" in Texas and its contacts with New Jersey are not so "continuous and systematic" to render it "at home" in New Jersey—the showing needed to establish general jurisdiction. *Fischer*, 42 F.4th at 383-84. Thus, the focus of this dispute is whether this Court has specific personal jurisdiction over Adams.

There are three requirements for establishing specific personal jurisdiction over a nonresident defendant: (1) the defendant has "purposefully availed itself of the privilege of conducting activities within the forum State" or has "purposefully directed its conduct into the forum State"; (2) the plaintiff's claims "arise out of or relate to the defendant's forum conduct"; and (3) the exercise of jurisdiction is "reasonable under the circumstances." *Bristol-Myers Squibb*, 582 U.S. at 272 (cleaned up).

The first two elements address whether a defendant has sufficient minimum contacts with the forum to warrant jurisdiction. The aim of the first requirement is to ensure that a defendant has "deliberately" engaged in activities or created continuing obligations in the forum state and "will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (cleaned up). The second requirement ensures that there is a "strong relationship among the defendant, the forum, and the litigation," *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 365 (2021)), such that litigation in the forum was "reasonably foreseeable," *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322 (3d Cir. 2007).

If the first two requirements have been satisfied, jurisdiction is "presumptively constitutional" and defeating it requires the defendant to "present a compelling case" that jurisdiction is unreasonable under the third requirement. *Id.* at 324 (cleaned up). When determining reasonableness, courts consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Bristol-Myers Squibb*, 582 U.S. at 272.

**V.     Analysis**

Adams correctly argues that specific jurisdiction cannot be predicated on a simple purchase of goods from a New Jersey seller. *See Burger King Corp.*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that

it cannot."). However, as Elan sets forth in its declaration by Elan Vice President Julie Weisman (D.E. 18-1, Plf. Decl.), Adams did not merely make two isolated purchases from a New Jersey seller in June 2023. The surrounding circumstances and the parties' longstanding course of dealing reveal a different story. *See Burger King Corp.*, 471 U.S. at 479 ("[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.").

For more than 50 years, Elan has supplied Adams with vanilla extract. (D.E. 18-1, Plf. Decl. ¶ 5; *see also id.* Ex. A. ¶ 13 (Adams's November 2023 complaint against Elan in the Western District of Texas noting that "[t]hrough the course of multiple agreements, purchase orders, communications, and millions of dollars' worth of transactions," Elan has supplied Adams with vanilla extract "[f]or more than 50 years").) After a 13-year lull in their business relationship from 2002 to 2015, Adams reached out to Elan by email in January 2015 to solicit information, try product samples, and ultimately revive their supplier relationship. (*Id.* ¶¶ 6-8; Ex. B (email chain).) From September 2015 to July 2023, Adams made 127 purchases of more than 1.3 million pounds of Elan's vanilla extract products. (*Id.* ¶¶ 9-10; Ex. C (list of Adams's purchase orders).) These 127 transactions "necessarily" involved telephone and email communications with Elan's personnel in New Jersey to discuss and agree upon quantity, price, and other product specifications. (*Id.* ¶ 11.) They also involved several in-person meetings at Elan's New Jersey office to discuss Adams's "ongoing vanilla extract supply needs, product manufacturing specifications, and pricing." (*Id.* ¶¶ 12-13.) Adams sent personnel to Elan's New Jersey office for such meetings on April 22, 2015, May 30, 2018, August 12, 2021, September 22, 2021,

6

November 18, 2022, and July 19, 2023.  (*Id.* ¶ 13).  Adams pays for each order by check or wire transfer to Elan's New Jersey office.  (*Id.* ¶ 12.)

  a. **Purposeful Availment**

  Under the first requirement for specific personal jurisdiction, Adams has deliberately created ongoing obligations in New Jersey by maintaining a supplier relationship with Elan for decades.  After a 13-year lull in their business dealings, it was Adams that reached out to Elan, the New Jersey-based vanilla extract supplier, in 2015 to revive the relationship.  Since then, Adams has sustained that relationship by placing over a hundred orders for Elan's vanilla extract products, discussing the terms of its orders through emails and phone calls directed to Elan representatives in New Jersey, and submitting payment to the New Jersey address listed on each invoice by mail or wire transfer.  Adams representatives have also visited Elan's New Jersey offices six times to meet and discuss the ongoing supplier relationship.

  When considered in totality, these factual allegations establish that Adams is not being "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475; *see Carteret Sav. Bank*, 954 F.2d at 149-50 (holding that defendant communicating with a client in New Jersey through telephone calls and letters, in combination with defendant traveling to New Jersey to attend a meeting with that client, shows that defendant "purposefully avail[ed] himself of the privileges of acting within New Jersey" and "suffices to establish the minimum contacts necessary for specific jurisdiction"); *N. Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 691 (3d Cir. 1990) (finding specific jurisdiction over a New York defendant who "had an ongoing business relationship [with a forum state corporation] for over 30 years" and who "deliver[ed] monies and communications into [the forum state that] were more than merely consequential"); *Williams v. Zhou*, 2018 WL 648354, at *4-5 (D.N.J. Jan. 30, 2018)

7

(McNulty, J.) (concluding that defendants' emails to plaintiff in New Jersey and attendance at a meeting with plaintiff in New Jersey were sufficient to show purposeful availment when "taken together" despite being "hardly overwhelming" when "considered one at a time"). The Court is satisfied that Elan has met its burden of showing purposeful availment.

### b. Relatedness

Additionally, Elan has presented sufficient evidence for the Court to reasonably infer that its claims in this lawsuit arise out of or relate to Adams's contacts in New Jersey. It appears that Adams's only contacts with New Jersey arise out of its vanilla extract supplier relationship with Elan—the very relationship that gave rise to the two June 2023 purchase orders at issue here. Adams went to Elan's New Jersey office four times between 2021 and 2023. (D.E. 18-1, Plf. Decl. ¶ 13.) The most recent meeting was on July 19, 2023 (*id.*)—one month after the two purchase orders were placed in June 2023, two weeks after the first order was delivered on July 6, and five days before the second order was delivered on July 24 (Compl. ¶¶ 8-12). Construing all the facts in favor of plaintiff as required, the Court is satisfied that the timing of the July 2023 meeting coupled with the surrounding circumstances of the parties' longstanding relationship sufficiently establishes a connection between Adams's forum contacts and Elan's claims for breach of contract, quantum meruit, unjust enrichment, and account stated.[2] *See, e.g.*, *Williams*, 2018 WL 648354, at *2, 5 (concluding that plaintiff's breach of contract, quantum meruit, and unjust enrichment claims

---

[2] Although the "usual practice" is to determine specific jurisdiction on a claim-by-claim basis, it is not always necessary for "certain factually overlapping claims." *O'Connor*, 496 F.3d at 317 n. 3 (cleaned up). Here, because Elan's claims stem from the same factual allegation that Adams failed to pay for two vanilla extract orders, the Court need not conduct a claim-specific analysis. *See, e.g.*, *Abira Med. Labs., LLC v. Blue Cross of Idaho Health Serv.*, 2024 WL 3594410, at *4 (D.N.J. July 30, 2024) (Castner, J.) ("Because Plaintiff's claims in this case all stem from the same allegation that Defendant failed to pay . . . for laboratory testing services, a claim-specific analysis is not necessary.").

for defendants' failure to pay an outstanding invoice sufficiently related to the defendants' contacts with New Jersey because "[t]he defendants sent a communication—several, in fact—into New Jersey and arranged an in-person meeting in New Jersey that allegedly started a business relationship" and "[t]hat alleged business relationship is now the subject of this litigation").

### c. Reasonableness

Having found that the first two requirements for specific personal jurisdiction are satisfied, the Court concludes that Adams has not satisfied its heavy burden of showing that jurisdiction is unreasonable here. *See Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."). Adams mentions in passing that "another lawsuit between the parties is already pending" (D.E. 19, Def. Reply Br. at 3) without explaining why that pending lawsuit would make jurisdiction unreasonable here.[3] Adams does not otherwise argue or present evidence as to why litigating in New Jersey would be overly burdensome or why this Court lacks an interest in the outcome of the dispute.

The Court is satisfied that it has a strong interest in ensuring that Elan, a New Jersey corporation, is compensated for its unpaid invoices. *See Williams*, 2018 WL 648354, at *6 ("While it may be a burden for [defendants] to litigate in New Jersey, New Jersey has a manifest interest in providing an effective means of redress" for New Jersey residents whose invoices remain unpaid); *Fin. Software Sys., Inc. v. Questrade, Inc.*, 2018 WL 3141329, at *7 (E.D. Pa. June 27, 2018) ("[T]o the extent that the location of nonpayment is relevant to personal jurisdiction, courts

---

[3] Elan provided the Court with a copy of Adams's complaint filed in the Western District of Texas in November 2023, one month after Elan initiated the lawsuit in this Court in October 2023. (D.E. 18-1, Plf. Decl. Ex. A.) That lawsuit involves vanilla extract purchases from March and May 2022 and does not concern the two June 2023 purchases at issue here.

have looked not to the location of the *remission*, but to the location of the resulting *injury*."); *N. Penn Gas Co.*, 897 F.2d at 690 (finding specific jurisdiction where plaintiff "suffered economic injury within [the forum] as a result of [defendant's] breach"). Adams has not raised, and this Court does not find, any other convenience, efficiency, or policy concerns that would overcome the presumptive finding of specific personal jurisdiction. *See Bristol-Myers Squibb*, 582 U.S. at 272.

The Court is therefore satisfied that specific personal jurisdiction over Adams comports with the Fourteenth Amendment's "traditional notions of fair play and substantial justice." *Carteret Sav. Bank*, 954 F.2d at 145 (cleaned up).

**VI.   Conclusion**

For the foregoing reasons, the Court denies Adams's motion to dismiss for lack of personal jurisdiction. An appropriate order will follow.


Dated: <u>August 12, 2024</u>                              <u>/s/ Katharine S. Hayden</u>
                                                          Katharine S. Hayden, U.S.D.J.